IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MYRON MOREHOUSE and <br> AMY MOREHOUSE, <br><br>     Plaintiff, <br><br> vs. <br><br> FLUOR ENTERPRISES, INC., <br> ECOA INDUSTRIAL PRODUCTS, INC., and <br> ALCOA, INC., <br><br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiffs state as follows:

### I. Jurisdiction

1.    The Plaintiffs Myron Morehouse and Amy Morehouse are husband and wife and are residents of Indiana.

2.    The Defendant Fluor Enterprises, Inc. ("Fluor") is a corporation incorporated under the laws of California with its principal place of business in Texas.

3.    The Defendant ECOA Industrial Products, Inc. ("ECOA") is a corporation incorporated under the laws of Florida with its principal place of business in Florida.

4.    The Defendant Alcoa, Inc. ("Alcoa") is a corporation incorporated under the laws of Pennsylvania with its principal place of business in New York.

5.    The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

## II.  Cause of Action

6. At all relevant times, Defendant Alcoa contracted with Defendant Fluor to open an Aluminum-Lithium Aerospace Plant ("Aerospace Plant Project") in Lafayette, Indiana.

7. At all relevant times, Plaintiff Myron Morehouse ("Myron") was an employee of Industrial Contractors, Inc. ("ICI").

8. At all relevant times, Myron worked on the Aerospace Plant Project as an employee of ICI.

9. On or around July 8, 2014 while working on the north pit of the Aerospace Plant Project at Alcoa, Myron was using a wired control box to operate a scissor lift ("wired control box" and "scissor lift", respectively) that was installed on rails attempting to adjust the stops on the rails.

10. The wired control box used to operate the scissor lift had four buttons:  RIGHT, LEFT, DOWN, UP.

11. There was an inductor on top of the scissor lift and a hoist picking beam was attached to the top of the inductor.

12. Myron pressed one of the buttons on the wired control box to move the scissor lift laterally to the west, but while the scissor lift was moving the button on wired control box became stuck in the "on" position.

13. The wired control box did not have a STOP button or an emergency-stop button or other emergency-stop mechanism.

14. As a result of the stuck button and the absence of any stop button or emergency-stop mechanism, Myron was not able to stop the scissor lift from moving.

15. Because the scissor lift did not stop moving laterally, the hoist picking beam attached to the top of the inductor collided with the crucible, shearing off the bolts attaching the

picking beam to the inductor, causing the picking beam to fall and hit Myron below, causing serious injuries.

16. At all relevant times, the scissor lift and wired control box was owned by Defendant Alcoa.

17. The scissor lift and wired control box was designed by Defendant ECOA.

18. The scissor lift and wired control box was manufactured by Defendant ECOA.

19. The scissor lift and wired control box was placed into the stream of commerce by Defendant ECOA.

20. The scissor lift and wired control box was defective and unreasonably dangerous in its design and/or manufacturing.

21. At all relevant times, Defendant Fluor had a duty to maintain a safe workplace and a duty to make the facility reasonably safe for business invitees.

22. At all relevant times, Defendant Alcoa had a duty to maintain a safe workplace and a duty to make the facility reasonably safe for business invitees.

23. Defendant Fluor failed to maintain a safe workplace and failed to keep the facility in a reasonably safe condition for business invitees.

24. Defendant Alcoa failed to maintain a safe workplace and failed to keep the facility in a reasonably safe condition for business invitees.

25. As a direct and proximate result of the careless and negligent acts and omissions of the Defendants, each of them, Myron has sustained serious and permanent injuries. He has incurred medical expenses and incidental expenses and he will incur additional medical expenses and incidental expenses in the future as a result of his injuries. He has lost wages and has suffered impairment to his earning capacity as a result of his injuries. He has experienced pain, suffering and

mental anguish, and he will continue to experience pain, suffering and mental anguish in the future as a result of his injuries.  His injuries are permanent in nature and affect his ability to function as a whole person.

26. At all times relevant hereto, the Plaintiff Amy Morehouse was and is the spouse of the Plaintiff Myron Morehouse.

27. As a direct and proximate result of the carelessness and negligence of the Defendants, each of them, the Plaintiff Amy Morehouse has sustained damages.  She has lost income and incurred incidental and miscellaneous expenses as a result of the injuries to her husband and she may lose more income and incur incidental and miscellaneous expenses in the future as a result.  She has lost the value of his services and consortium, and she may lose the value of some of his services and consortium in the future.

**WHEREFORE**, the Plaintiffs, Myron and Amy Morehouse pray for damages against the Defendants in an amount which will fully and fairly compensate him for the damages sustained, for costs of this action, for pre-judgment interest and for all just and proper relief in the premises.

### III.  Demand for Jury Trial

Plaintiffs request a trial by jury.

> Respectfully submitted,
>
> _____
> Robert W. Johnson, Attorney No. 17391-49
> JOHNSON JENSEN LLP
> One Indiana Square
> Suite 1640
> Indianapolis, IN  46204
> rjohnson@johnsonjensen.com
> 317.269.7799 tel
> 317.269.7784 fax
>
> Attorney for Plaintiffs